# WHEELING.

### FAWCETT v. RAILWAY CO.

Submitted June 5, 1884—Decided November 1, 1884.

1. The cause of an injury in contemplation of law is that which immediately produces it as its natural consequence; and, therefore, if a party be guilty of a default or act of negligence which would naturally produce an injury to another, but, before such injury actually results, a third person does some act which is the immediate cause of the injury, such third person is alone responsible for the injury.   (p. 759.)

2. Where objection is made to the introduction of evidence and overruled by the court, the appellate court will hold such objection as having been waived by the exceptor unless the ruling of the court is excepted to.   (p. 761.)

3. Where it is intended to have the appellate court review the rulings of the circuit court upon the question of the sufficiency or insufficiency of the evidence to warrant the verdict of the jury, the bill of exceptions should contain a certificate of the facts proved not of the evidence produced on the trial, especially where the evidence is conflicting.   (p. 762.)

The facts of the case appear in the opinion of the Court.

*J. Dunbar* for plaintiff in error.

*G. W. Caldwell* for defendants in error.

SNYDER, JUDGE:

Action of trespass on the case brought, October 4, 1882, by Thomas Fawcett & Sons against the Pittsburg, Cincinnati and St. Louis Railway Company in the circuit court of Brooke county to recover damages for the destruction of the plaintiffs' coal barge.   At the June term, 1883, a trial was had by jury on the general issue, a verdict returned in favor

of the plaintiffs for one thousand six hundred and eighty-one dollars and seventy-five cents, the motion of the defendant to set aside the verdict overruled and judgment entered for the plaintiffs.    The defendant has brought the case to this Court for review.

It appears from the bill of exceptions, that the defendant was operating a line of railway along the east bank of the Ohio river in Brooke county and that, on July 31, 1880, it entered into a written agreement with the Keystone Coal Company, limited, by which it agreed to transport over its road from a point near Hanlan's Station to a point on the Ohio river opposite the city of Steubenville, certain quantities of coal for said coal company each day at a fixed price per ton, the said coal company to provide and maintain in proper order a side track at the latter point and furnish all necessary cars and keep the same in repair to the satisfaction of the general superintendent of the defendant, in charge of that portion of its railway, for the conduct of the business contemplated by the agreement which was to continue in force for three years from its date; that the plaintiffs introduced evidence tending to prove that the said coal company had constructed the side track at the point agreed upon extending from the main line of defendant's railway to the Ohio river, a distance of about six hundred feet, terminating at a tipple constructed for dumping coal from the cars into barges in the river; that this side track had been located by a competent engineer according to specifications submitted to and approved by the chief engineer of the defendant; that it had been constructed in accordance with said specifications and after its completion had been inspected by an agent of the defendant and pronounced satisfactory; that after this side track had been used by the defendant to deliver coal in barges in the river for more than a year, the defendant about five o'clock on the morning of January 8, 1882, switched from its main track upon this siding fifteen loaded coal cars in such a negligent and careless manner that they were driven over the siding through the tipple and into the river where they fell upon and into the barge of the plaintiffs located at the mouth of the tipple for receiving coal for shipment and that the plaintiffs' barge

was thereby sunk and destroyed. On the other side, the defendant offered evidence tending to contradict that of the plaintiffs in many respects and tending to prove that the said siding was not constructed in a proper and safe manner and that the loss of the plaintiffs' barge was caused by the defective construction and unsafe condition of said side track and not by the want of care or the negligence of the defendant and that therefore the defendant was not responsible for the loss of the plaintiffs' barge.

After the close of the evidence the plaintiffs' counsel asked the court to instruct the jury as follows:

"1st. If the jury believe from the evidence that the barge of the plaintiffs was destroyed by the negligence of the defendant, and that said negligence was the immediate or proximate cause of the loss of said barge, the verdict should be for the plaintiffs.

"2d. If the jury believe from the evidence that the said barge was destroyed by the defendant's negligence, then the jury are instructed that the defendant cannot excuse its negligence by proof that a third party's negligence contributed to the loss of said barge.

"3d. If the jury believe from the evidence that the joint negligence of the defendant, the P., C. and St. L. R. Co. and the Keystone Coal Company, limited, caused the loss of the plaintiffs' barge, the verdict should be for the plaintiffs, unless the jury believe from the evidence that the plaintiffs were negligent in putting their barge under said coal tipple."

Which said request to charge was granted by the court, and said charge was given to the jury; to which the defendant, by its counsel, then and there excepted.

Thereupon the defendant's counsel asked the court to charge the jury as follows:

### FIRST PROPOSITION.

"The burden of proof is on the plaintiffs to show the negligence complained of, and if they have failed to show, by a preponderance of evidence, that the accident resulted from the negligence of the defendant, their verdict must be for the defendant.

### SECOND PROPOSITION.

"If the jury believe from the evidence that the defendant, by its agents and servants, was operating its road in such manner as prudent and reasonable agents would operate it under like circumstances, and said agents and servants were using ordinary care in the discharge of their duties, then the defendant is not liable in this action.

### THIRD PROPOSITION.

"That if the jury believe from the evidence that the Keystone Coal Company constructed the railroad at their tipple opposite the city of Steubenville for the use of its business in receiving its cars from the defendant's railroad, that it was unsuitable, unsafe and insecure, and the accident resulted from such insecurity and unsafeness, then the defendant is not liable for this accident unless they negligently performed their duty in placing the cars upon said coal company's railroad.

### FOURTH PROPOSITION.

"If the jury find from the evidence that the firm of Thomas Fawcett & Sons were in a position to know the condition and situation of the Keystone Coal Company's railroad, and its fitness or unfitness, security or insecurity for the performance of the work it was intended and built to accomplish, then the plaintiffs will not be entitled to recover in this action from this defendant if they believe the accident resulted from the contributory negligence of the Keystone Coal Company, even if the jury should find the acts of the agents and servants of the defendant were the remote and not the proximate cause of the injury complained of.

### FIFTH PROPOSITION.

"That if the jury find from the evidence that the road constructed by the Keystone Coal Company was a differently constructed road from the plans and specifications submitted to the agents and servants of the defendant and accepted by them, and the accident resulted in whole or in part from such changes or alterations made by the Keystone Coal Company without the knowledge and consent of the defend-

ant to said alterations and changes, then the defendant is not liable in this action, unless the accident was the direct result of the negligence of the officers, agents and servants of the defendant."

But the court refused to give the third, fourth and fifth propositions asked by the defendant. To which refusal, the defendant, by its counsel, then and there excepted.

The plaintiff in error assigns as error the rulings of the court on these instructions. The question presented by this assignment does not, it seems to me, relate to the right of the plaintiffs to recover for the loss of their barge, but whether or not the jury had the right to exonerate the plaintiff in error by finding that the loss was occasioned by the neglect or misconduct of the Keystone Coal Company. The only evidence tending to prove any default on the part of the coal company was that which tended to show that it had not constructed and kept in proper repair the siding leading from the defendant's main track to the tipple, on the bank of the river. Whether this alleged default of the coal company could exonerate the plaintiff in error from liability depends wholly upon the fact whether it could under any circumstances be treated as the proximate cause of the loss sustained by the plaintiffs. That it may have been the remote cause of the loss is altogether immaterial. The cause of an injury in contemplation of law, is that which immediately produces it as its natural consequence; and, therefore, if a party be guilty of a default or act of negligence which would naturally produce an injury to another, but, before such injury actually results, a third person does some act which is the immediate cause of the injury, such third person is alone responsible though the injury could not have occurred but for the default or neglect of the first party. The causal connection between the first act of negligence and the injury is broken by the intervention of the act of a responsible party, which latter act is in law regarded as the sole cause of the injury according to the maxim, *in jure non remota causa sed proxima spectatur*—*Washington* v. *B. & O. R. R. Co.*, 17 W. Va. 190.

In the case at bar, if we admit that the coal company had so defectively constructed the siding as to make the injury inevitable whenever the siding should be used to transfer

coal cars over it, still no injury could have resulted unless the coal cars had been placed upon it, which did, in fact, by destroying the plaintiffs' barge, produce the injury complained of. The coal cars were put upon the siding by the defendant and not by the coal company. The siding of itself, however defective it may have been, could not have been the sole cause of the injury. If the cars had not been put on it by the defendant the injury could not have resulted. There being no evidence tending to prove that the accident was inevitable, it must have resulted from negligence. It was negligence in the defendant to run cars upon the siding if it was so defective and dangerous as the defendant has attempted to show. It is, therefore, clear that the direct and proximate cause of the injury to the plaintiffs was the negligence of the defendant either. in running the coal cars upon an unsafe siding or in doing so in a negligent and careless manner. In neither event could the coal company be regarded as the immediate and proximate cause of the destruction of the plaintiffs' barge, though it may have been the remote cause; but for such remote cause it could not have been made liable to the plaintiffs in this action. The instructions of the plaintiffs and the first and second propositions of the defendant which the court gave to the jury having fairly submitted to the jury the question of negligence, the court did not err in refusing to give to the jury the third, fourth and fifth propositions of the defendant, which attempted to exonerate the defendant by instructing the jury that they might find that the remote cause, the default of the coal company, had produced the injury to the plaintiffs. There was, therefore, no error to the prejudice of the plaintiff in error in the rulings of the court upon the instructions.

The next error relied on by the plaintiff in error is, that the court improperly admitted the following question and answer of the plaintiffs' witness, J. M. Bailey:

"Question—State to the jury after this accident, by which the Keystone Coal Company lost its cars on the 8th day of January, 1882, at its tipple in Brooke county here, whether or not you had a conversation or any agreement or arrangement with Mr. Caldwell, the superintendent of the defendant's railway, with respect to the wreck at the said tipple;

and if so, what was that arrangement.   I mean to include the barge as well as the cars?"

(Objected to.   Objection overruled.)

"Answer—Yes, sir.   In company with Mr. Lee and Mr. Brown, I called upon Mr. Caldwell, at his office in the city of Pittsburgh, and after talking the matter over, there had been considerable controversy about the railroad company assuming any liability of the accident at all, but he finally said that they acknowledged their ——"

(Exception.—Objected to.   Objection overruled and ex-ception by defendant.)

(Witness continuing answer)—"Finally acknowledged that the railroad company were liable for the accident, and that they would go to work and clean out the tipple, take out the cars and barge and restore the tipple to its former condition."

Before this question was asked it had been proven that Mr. Caldwell was the general manager and superintendent of the defendant's company.   The question, therefore, seems to me to be entirely unobjectionable.   Corporations can act only through their officers and agents and the acts of these are the acts of the corporation.   The general manager of a railroad company is the executive officer of the corporation. No evidence was offered or even suggested that Mr. Caldwell was not the proper officer to look after and adjust matters of the kind referred to in the question and answer of this witness.   The question was certainly, of itself, no ground for setting aside the verdict of the jury, nor was that part of the answer which preceded the defendant's objection. If any part of the answer was objectionable it was that given after the interruption and to this no objection was made. But, if both the question and answer could be regarded as improper, the plaintiff in error must be held by this Court to have waived his objection thereto for the reason that he failed or declined to except to the ruling of the court— Washington, &c., v. Hobson, 15 Gratt. 122; Wickers v. B. & O. R. R. Co., 14 W. Va. 157.

The only remaining assignment of error is, that the verdict was contrary to the evidence.   With the exception of the agreement between the defendant and the Keystone

Coal Company hereinbefore mentioned, the evidence was entirely parol, taken down at the trial by a stenographer in the form of questions and answers, and thus incorporated in the bill of exceptions. This report of the testimony covers one hundred and thirty-two pages of the printed record. The testimony is conflicting and plainly of a character that precludes this Court from reviewing it to determine whether it does or does not sustain the verdict of the jury—*Morgan* v. *Fleming, supra* p. 186. The only use this Court can possibly make of it would be to ascertain the propriety or impropriety of the rulings of the court in regard to the allowance or rejection of the evidence and instructions excepted to by the defendant during the trial. The circuit court should, therefore, have refused to give any bill of exceptions in this form, but should have certified the facts if it was intended to have this Court review the case on the question whether or not the verdict was warranted by the facts proved. But if it was intended merely to have this Court review the rulings of the circuit court in regard to the allowance or rejection of evidence or instructions excepted to by the plaintiff in error, then only so much of the evidence or facts should have been certified as would show the relevancy or irrelevancy of the evidence or the pertinency or impertinency of the instructions excepted to. It is entirely clear that this Court cannot undertake, from the mass of contradictory testimony thus certified, to determine whether the verdict was warranted or not by the evidence. If, under the settled rule in such cases, all the parol evidence of the plaintiff in error in conflict with that of the defendants in error is rejected, very little of the exceptor's evidence will be left—certainly not enough, upon the most liberal view of it, to justify this Court in holding that the verdict is not sustained by the evidence—*Sheff* v. *Huntington*, 16 W. Va. 307; *Black* v. *Thomas*, 21 *Id.* 709.

For the reasons aforesaid I am of opinion that the judgment of the circuit court should be affirmed.