HENRY JUSTICE, *Administrator, etc.*

*v.*

AMHERST COAL COMPANY

(No. 10906)

Submitted January 14, 1958. Decided February 18, 1958.

*Jackson, Kelly, Holt & O'Farrell, W. T. O'Farrel, James K. Brown,* for plaintiff in error.

*Martin C. Bowles, Toney E. Cline,* for defendant in error.

RILEY, JUDGE:

This action of trespass on the case was instituted by Henry Justice, who sues as administrator of the estate of Dallas Ray Justice Deceased, in the Court of Common Pleas of Kanawha County, against Amherst Coal Company, a corporation, for the alleged wrongful death on April 16, 1955, of the decedent, Dallas Ray Justice, an infant ten years of age. The Court of Common Pleas of Kanawha County entered judgment in favor of the plaintiff and against the defendant, based upon a verdict of the jury in the amount of ninety-five hundred dollars.

Thereupon the defendant timely sought a writ of error and supersedeas to the judgment from the Circuit Court of Kanawha County, which was refused by the circuit court by order entered on the 11th day of May, 1957. To this order the defendant coal company prosecutes writ of error to this Court.

Plaintiff's declaration charges that on its leasehold the defendant maintained a recreation hall known as the "Scout Hall"; that to the knowledge of the defendant children in the defendant's coal camp, where the Scout Hall was located, were accustomed to play on the premises in, around and adjacent to the Scout Hall; and that defendant "did dump, left or cause to be dumped in the trash, rubbish and refuse on the ground near the Scout Hall, a place where children of tender years customarily and usually played and frequented, a certain container, filter, or object which contained or was saturated with a highly inflammable, combustible and explosive substance, the said defendant having knowledge that such container, filter, or object would be a source of great danger to said children * * *."

The declaration further charges that "* * * his decedent, Dallas Ray Justice, aged 10 years * * * after the aforesaid container, filter or object was dumped, thrown and left at the aforesaid dump by an employee and agent of said defendant, to-wit, went with his youthful companion to play behind the said Scout Hall; that while so engaged in play the youths saw the said container, filter, or object left by the Coal Company; that Dallas Ray Justice, being wholly without knowledge of its danger, and without warning from anyone of its inflammable and explosive nature proceeded to handle the said container, filter, or object as a play thing; that the substance contained therein dripped, leaked, or poured from the container, filter or object and became ignited, inflamed, and exploded with great force and violence and as a proximate and direct result thereof the clothing of the said Dallas Ray Justice was caught on fire * * *."

Plaintiff's evidence showed that Arthur Gartin, an employee of the defendant, engaged in cleaning up defendant's coal camp, at some time prior to the date of the death of plaintiff's decedent, collected a load of trash from "the lower end of the truck garage", belonging to the defendant, and dumped it over the creek bank behind Scout Hall, which hall consisted of a quonset hut. In this trash were an oil filter and two cardboard

boxes of the kind or variety in which "oil filters" were kept. Gartin identified the oil filter, which he admitted was similar to the one which was introduced into evidence as "Defendant's Exhibit 1A". Gartin testified without contradiction that he did not know when the filter in question was dumped, stating only it was some time before the decedent's death, which occurred shortly after the explosion.

Plaintiff's witness, Clyde Hale, ten years of age, testified that he was with Dallas Ray Justice when the explosion occurred; that while the two boys were gathering pop bottles they found "this can" and a match box; that plaintiff's decedent "got this can and poured some out and told me to try the match to it"; and that the can or filter blew up with a sound like a "cannon", as a result of which Dallas Justice caught on fire.

On direct examination Hale was asked if the thing which was used to pour out the liquid looked like either of the oil filters which had been identified, and which were subsequently introduced in evidence, to which Hale answered, "No". This witness testified further that he thought that the liquid which was poured out was lamp oil.

On cross-examination Hale testified that a can introduced as "Defendant's Exhibit No. 3", resembled the can from which the liquid was poured; that the can from which the substance was poured had two holes in it, similar to those in the can introduced as "Defendant's Exhibit No. 3"; and that the liquid in question was poured from these holes.

Plaintiff's witness, Ruth Price, testified that after the explosion she went behind the Scout Hall and found a burned area on the ground and an oil filter similar to "Defendant's Exhibits Nos. 1A and 2A", which oil filter had been burned. This filter gave no evidence of having exploded. Being referred to "Plaintiff's Exhibit No. 1", a photograph showing several tin cans lying in the rear of the quonset hut, this witness testified that

there were such cans lying around immediately following the explosion; and that people in the camp threw cans and other trash there, and also that children brought cans there. This witness further testified that the area behind the Scout Hall was a sort of loafing place for the public, which had access to it.

Plaintiff's witness, Paul Price, testified that after the explosion he saw a silver oil filter that had been burned, which was lying some ten or twelve feet from the burned spot; and that he threw this filter into the nearby creek. This witness also testified that children were accustomed to play on the property upon which the alleged explosion occurred; that such property was under defendant's control; that the public generally had access to the premises and used them day and night; and that at the time of the explosion there were tin cans lying about the premises.

The record discloses that the explosion occurred upon what would generally be regarded as a recreation center, in fact, a basketball board had been erected on the premises.

Tony Bevino, a witness for plaintiff, testified that after the explosion he found an oil filter "at the lower end from the burned area", which was similar to the one introduced in evidence. This filter, he testified, was full of little holes, and was similar to the oil filters used in defendant's bulldozers. This witness also testified that there were different sizes and kinds of tin cans lying behind Scout Hall immediately after the explosion.

Defendant's witness, W. G. Beddow, general manager of Amherst Coal Company, testified that the defendant did not have oil and gas rights on the property comprising the recreation center, but that another company had such rights and had used tractors incidental to operating for oil and gas; that other firms built pipe lines over the premises and used tractors incidental thereto; that defendant did not own the timber on the land, but that another company removed the timber in 1954, using

tractors, caterpillars, bulldozers and similar equipment in such lumbering operations; and that this witness had seen gasoline and kerosene poured out of tin can on a fire, which caused the container to explode and shoot a distance of twenty or thirty feet.

Defendant's witness, H. C. Taylor, a mechanic employed by the coal company, testified that at the direction of counsel for the defendant he removed from a diesel truck and from a bulldozer the filters introduced into evidence as "Defendant's Exhibits 1A and 1B"; that he had determined that it took the filters about fifteen minutes to drain; that when the filters are in use diesel fuel is pumped through them; that these were the types of filters in use when plaintiff's decedent was burned; that at the time of the explosion the defendant was using in its vehicles diesel fuel; that witness had handled and been around diesel fuel for the past ten years; and that such fuel does not burn easily, but only burns when subjected to a hot fire.

Defendant's witness, James E. Neff, testified that he had done mechanical work; that he had had occasion to burn diesel fuel; and that it was not highly inflammable, but on the contrary was difficult to ignite. This witness also testified that the fuel could not be ignited with a match; and that the usual method of igniting diesel fuel was to use a torch. He also stated that diesel fuel was burned in open cans or salamanders for heating purposes.

On the record it was stipulated that : (1) Henry Justice was duly and legally appointed administrator of the estate of Dallas Ray Justice, deceased, by the County Court of Logan County; (2) he is the duly acting administrator of his son's estate; and (3) the death of Dallas Ray Justice was caused by burns he received on April 16, 1955.

The issues are:   (1) Did the evidence justify a finding by the jury that the defendant was guilty of primary negligence, which proximately caused the decedent's

death; (2) was the verdict inconsistent with and contrary to the plain preponderance of the evidence; (3) did the trial court err in refusing defendant's motion for a directed verdict; and (4) did the Circuit Court of Kanawha County err in refusing to grant the defendant a writ of error and supersedeas to the judgment of the Court of Common Pleas of Kanawha County.

In this jurisdiction the doctrine of attractive nuisances is not recognized. *Ritz* v. *City of Wheeling*, 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 148; *Uthermohlen* v. *Bogg's Run Min. & Mfg. Co.*, 50 W. Va. 457, 40 S. E. 410, 55 L. R. A. 911, 88 Am. St. Rep. 884; *Conrad* v. *Baltimore and Ohio Railroad Co.*, 64 W. Va. 176, 61 S. E. 44, 16 L. R. A. (N.S.) 1129; *Martino* v. *Rotondi*, 91 W. Va. 482, 113 S. E. 760, 36 L. R. A. 6; *Adams, Admr.* v. *Virginian Gasoline & Oil Co.*, 109 W. Va. 631, 156 S. E. 63; *White* v. *Kanawha City Co.*, 127 W. Va. 566, 34 S. E. 2d 17. In *Rine* v. *Morris*, 99 W. Va. 52, 127 S. E. 908, this Court held: "One leaving an instrumentality dangerous to children at a place where they have a right to be, is charged with notice of its attraction to them. It is his duty to use ordinary care to prevent injury to a child thereby." See *Reed, Sheriff, Adm'r., etc.* v. *Janutolo*, 129 W. Va. 563, 42 S. E. 2d 16; *Wellman* v. *Fordson Coal Co.*, 105 W. Va. 463, 143 S. E. 160; and *Colebank, Admr.* v. *Nellie Coal & Coke Co.*, 106 W. Va. 402, 145 S. E. 748.

However, in the case at bar the plaintiff has wholly failed to prove by substantial evidence that the can or filter containing a substance of explosive nature had been dumped on or near the playground by the defendant Coal Company.

In an action at law to recover damages either for wrongful death or for personal injuries, a verdict in favor of the plaintiff, or in the case of an action of wrongful death in favor of a plaintiff administrator, which is wholly unsupported by evidence on a point essential to the finding, or is based upon mere speculation or conjecture, should be set aside and a new trial awarded. *Miller* v. *United Fuel Gas Co.*, 88 W. Va. 82, 106 S. E.

419; *State* v. *Hurst,* 93 W. Va. 222, 116 S. E. 248; *Burk* v. *Huntington Development & Gas Co.,* 133 W. Va. 817, 58 S. E. 2d 574; *Ritz* v. *Kingdon,* 139 W. Va. 189, 79 S. E. 2d 123; *Stenger* v. *Hope Natural Gas Co.,* 139 W. Va. 549, 80 S. E. 2d 889; *Bower* v. *Brannon,* 141 W. Va. 435, 90 S. E. 2d 342; and *Keefer* v. *Logan Coca-Cola Bottling Works,* 141 .W. Va. 839, 93 S. E. 2d 225.

For the foregoing reasons, this Court will reverse the judgments of the Circuit Court and the Common Pleas Court of Kanawha County, set aside the verdict of the jury, and remand this cause for a new trial in the Common Pleas Court of Kanawha County.

*Judgments reversed;*
*verdict set aside;*
*new trial awarded.*